IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INVENTOR HOLDINGS, LLC, | Case No.  1:14-cv-1070-LPS-CJB |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| KING.COM LTD., | |
| Defendant. | |

## <u>DEFENDANT KING.COM'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)</u>

Steven L. Caponi (DE Bar #3484)
Blank Rome LLP
12 N. Market Street
Wilmington, DE 19801
(302) 425-6400
caponi@blankrome.com

*Attorney for Defendant
King.com Ltd.*

## Table of Contents

**Page**

I.      Introduction ................................................................................................................ 1

II.     Summary of the Argument ......................................................................................... 2

III.    Nature and Stage of the Proceedings ........................................................................ 3

IV.     Statement of Facts ...................................................................................................... 4

        A.      The '198 Patent Claims Abstract Ideas ........................................................... 4

        B.      The Patent Office Recognized the Underlying Abstract Nature of the
                Claims ............................................................................................................... 6

        C.      The '198 Patent's Technological Disclosures are Generic ............................... 8

V.      Argument .................................................................................................................... 9

        A.      Determination of Patent Eligibility at This Stage is Appropriate .................... 9

        B.      Under *Alice*, the Court Evaluates the Patentability of Abstract Ideas Using
                a Two-Part Test .............................................................................................. 10

        C.      The Claims of the '198 Patent are Directed to Abstract Ideas ...................... 13

        D.      The Asserted Claims Do Not Contain Anything That Transforms the
                Patent-Ineligible Abstract Ideas into Patent-Eligible Invention ................... 16

VI.     CONCLUSION ........................................................................................................ 18

## Table of Authorities

**Page**

**Cases**

*Alice Corp. Pty. Ltd., v. CLS Bank Int'l,*
    134 S. Ct. 2347 (2014) ................................................................................ *passim*

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.,*
    No. 1:10-cv-910, 2014 U.S. Dist. LEXIS 152447 (E.D. Va. Oct. 24, 2014) ...................... 1, 15

*Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Canada,*
    687 F.3d 1266 (Fed. Cir. 2012) ................................................................................ 10

*Bilski v. Kappos,*
    561 U.S. 593 (2010) ................................................................................................ 9

*buySAFE, Inc. v. Google, Inc.,*
    765 F.3d 1350 (Fed. Cir. 2014) ................................................................................ 17

*CMG Fin. Servs., Inc. v. Pac. Trust Bank, F.S.B.,*
    No. CV 11-10344 PSG, 2014 U.S. Dist. LEXIS 145557 (C.D. Cal. Aug. 29, 2014) .............. 13

*Cogent Med., Inc. v. Elsevier Inc.,*
    No. C-13-4479-RMW, 2014 U.S. Dist. LEXIS 139856 (N.D. Cal. Sept. 30, 2014) ........... 1, 13

*Comcast IP Holdings I, LLC v. Sprint Commc'ns Co. L.P.,*
    No. 12-205-RGA, 2014 WL 3542055 (D. Del. July 16, 2014) ................................................ 13

*Compression Tech. Solutions LLC v. EMC Corp.,*
    No. C-12-01746 RMW, 2013 WL 2368039 (N.D. Cal. May 29, 2013),
    *aff'd,* 557 F. App'x 1001 (Fed. Cir. Mar. 10, 2014) ................................................................ 10

*CyberSource Corp. v. Retail Decisions, Inc.,*
    654 F.3d 1366 (Fed. Cir. 2011) ................................................................................ 15

*DietGoal Innovations LLC v. Bravo Media LLC,*
    No. 13 Civ. 8391 (PAE), 2014 WL 3582914 (S.D.N.Y. July 8, 2014) ............................ 10, 13

*Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.,*
    758 F.3d 1344 (Fed. Cir. 2014) ................................................................................ 10

*Eclipse IP LLC v. McKinley Equip. Corp.,*
    No. SACV 14-cv-742-GW(AJWx), 2014 WL 4407592 (C.D. Cal. Sept. 4, 2014) ............. 1, 13

*Every Penny Counts, Inc. v. Wells Fargo Bank, N.A.,*
    No. 8:11-cv-2826-T-23TBM, 2014 U.S. Dist. LEXIS 127369 (M.D. Fla. Sept. 11, 2014) .... 13

*Genetic Techs. Ltd. v. Lab. Corp. of Am. Holdings*,
   Civ. A. No. 12-1736-LPS-CJB, 2014 WL 4379587 (D. Del. Sept. 3, 2014)......................1, 10

*Gottschalk v. Benson*,
   409 U.S. 63 (1972)...........................................................................................................15

*I/P Engine, Inc. v. AOL Inc.*,
   576 F. App'x 982 (Fed. Cir. 2014) ..................................................................................10

*Inventor Holdings LLC v. Gameloft Inc.*,
   Case No. 1:14-cv-01067-LPS-CJB (D. Del. Oct. 10, 2014)....................................................3

*Inventor Holdings LLC v. Glu Mobile Inc.*,
   Case No. 1:14-cv-01068-LPS-CJB (D. Del. Oct. 10, 2014)....................................................3

*Inventor Holdings LLC v. Kabam Inc.*,
   Case No. 1:14-cv-01069-LPS-CJB (D. Del. Nov. 4, 2014)......................................................3

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*,
   No. 2:13-CV-655, 2014 U.S. Dist. LEXIS 122244 (E.D. Tex. Sept. 3, 2014).......................13

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
   132 S. Ct. 1289 (2012)............................................................................................11, 16

*McRO, Inc. v. Namco Bandai Games Am., Inc.*,
   No. CV 12-10322-GW(FFMx),
   2014 U.S. Dist. LEXIS 135212 (C.D. Cal. Sept. 22, 2014).................................................1, 13

*Open Text S.A. v. Alfresco Software Ltd.*,
   No. 13-cv-04843-JD, 2014 WL 4684429 (N.D. Cal. Sept. 19, 2014) ..........................1, 13, 16

*Parker v. Flook*,
   437 U.S. 584 (1978)...........................................................................................................15

*Planet Bingo, LLC v. VKGS LLC*,
   No. 2013-1663, 2014 WL 4195188 (Fed. Cir. Aug. 26, 2014) .........................................12, 17

*In re Roslin Inst. (Edinburgh)*,
   750 F.3d 1333 (Fed. Cir. 2014)............................................................................................10

*Tuxis Techs., LLC v. Amazon.com, Inc.*,
   Civ. A. No. 13-1771-RGA, 2014 U.S. Dist. LEXIS 122457 (D. Del. Sept. 3, 2014) ...1, 10, 13

*UbiComm, LLC v. Zappos IP, Inc.*,
   Civ. A. No. 13-1029-RGA, 2013 WL 6019203 (D. Del. Nov. 13, 2013) ...............................17

*Ultramercial, Inc. v. Hulu, LLC*,
   No. 2010-1544, 2014 WL 5904902 (Fed. Cir. Nov. 14, 2014) ....................................... *passim*

iii

*Walker Digital, LLC v. Google, Inc.*,
    C.A. No. 11-cv-318-LPS, 2014 U.S. Dist. LEXIS 122448 (D. Del. Sept. 3, 2014) ...............13

*Wolf v. Capstone Photography, Inc.*,
    No. 2:13-cv-09573, 2014 U.S. Dist. LEXIS 156527 (C.D. Cal. Oct. 28, 2014) .......................1

**Statutes**

35 U.S.C. § 101 ..................................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ..................................................................................................3

# I.    INTRODUCTION

All claims of U.S. Patent No. 8,784,198 are invalid under 35 U.S.C. § 101 because they (1) are directed to abstract ideas and (2) do not recite any transformative inventive elements beyond a generic computer implementation.  *See Alice Corp. Pty. Ltd., v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355-60 (2014).   In *Alice*, the Supreme Court clarified the standard for determining whether a patent claims unpatentable abstract ideas.  And as recently as a week ago, the Federal Circuit confirmed not only the impact of *Alice* on patentability under Section 101, but also the importance of making such decisions early in the case, affirming the invalidation of a patent under Section 101 on a motion to dismiss.  *See Ultramercial, Inc. v. Hulu, LLC*, No. 2010-1544, 2014 WL 5904902, at *9-*12 (Fed. Cir. Nov. 14, 2014) (Mayer, C., concurring) ("whether claims meet the demands of 35 U.S.C. § 101 is a threshold question, one that must be addressed at the outset of litigation").[1]

The '198 patent claims nothing more than the unpatentable abstract idea of using a "code" to "unlock" an outcome in a game on a mobile device.  Critically, none of those claims add anything that transforms the abstract idea of moving forward in a game after you have

---

[1] Indeed, many courts have invalidated patents on motions to dismiss and motions for judgment on the pleadings.  *See, e.g.*, *Genetic Techs. Ltd. v. Lab. Corp. of Am. Holdings*, Civ. A. No. 12-1736-LPS-CJB, 2014 WL 4379587, at *6 (D. Del. Sept. 3, 2014) (invalidating claims under 35 U.S.C. § 101 on a motion to dismiss); *Open Text S.A. v. Alfresco Software Ltd.*, No. 13-cv-04843-JD, 2014 WL 4684429, at *3 (N.D. Cal. Sept. 19, 2014) (same); *Tuxis Techs., LLC v. Amazon.com, Inc.*, Civ. A. No. 13-1771-RGA, 2014 U.S. Dist. LEXIS 122457, at *13 (D. Del. Sept. 3, 2014) (same); *Cogent Med., Inc. v. Elsevier Inc.*, No. C-13-4479-RMW, 2014 U.S. Dist. LEXIS 139856, at *7-*10 (N.D. Cal. Sept. 30, 2014) (same); *Eclipse IP LLC v. McKinley Equip. Corp.*, No. SACV 14-cv-742-GW(AJWx), 2014 WL 4407592, at *6 (C.D. Cal. Sept. 4, 2014); *McRO, Inc. v. Namco Bandai Games Am., Inc.*, No. CV 12-10322-GW(FFMx), 2014 U.S. Dist. LEXIS 135212, at *44 (C.D. Cal. Sept. 22, 2014) (invalidating claims under 35 U.S.C. § 101 on a 12(c) motion); *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, No. 1:10-cv-910 (LMB/TRJ), 2014 U.S. Dist. LEXIS 152447, at *29-*30 (E.D. Va. Oct. 24, 2014) (same); *Wolf v. Capstone Photography, Inc.*, No. 2:13-cv-09573, 2014 U.S. Dist. LEXIS 156527, at *44 (C.D. Cal. Oct. 28, 2014) (same).

achieved an award into a patent-eligible invention.  Instead, the claims merely add generic computer elements such as a "mobile device," "computer-readable medium," "display screen," "processor," and "memory," which, under *Alice*, "cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice*, 134 S. Ct. at 2358.  Thus, this Court should dismiss Plaintiff's case and find all claims of the '198 patent to be invalid as a matter of law under 35 U.S.C. § 101 at this stage of the case, to avoid the costs of continued litigation on patents whose claims do not even meet the threshold of patentability.

## II.  SUMMARY OF THE ARGUMENT

1.      In *Alice*, the Supreme Court reiterated that abstract ideas are not eligible for patent protection.  *Alice*, 134 S. Ct. at 2354.  Because "[l]aws of nature, natural phenomena, and abstract ideas are the basic tools of scientific and technological work," permitting a patent on such a tool "might tend to impede innovation more than it would tend to promote it." *Id.* (internal quotations and citations omitted).  Unless a claim directed to an abstract idea contains "an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application," it is not patentable.  *Id.* at 2357 (internal quotations and citation omitted).

2.      The independent claims of U.S. Patent No. 8,784,198 are directed at the abstract idea of using a code to unlock a benefit in a game.  This abstract idea can be performed without the use of a computer, such as by rolling a die in a game such as Monopoly and receiving a benefit, such as a deed to a property.

3.      The addition of a "mobile device" to this abstract idea does not render the claims patent-eligible.  A mobile device is merely a generic computer, and "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice*, 134 S. Ct. at 2358.  The dependent claims similarly add nothing patentable.

4.     All claims of U.S. Patent No. 8,784,198 are therefore invalid under 35 U.S.C. § 101 because they (1) are directed to abstract ideas and (2) do not recite any transformative inventive elements beyond a generic computer implementation.

## III.    NATURE AND STAGE OF THE PROCEEDINGS

On August 19, 2014, Plaintiff Inventor Holdings, LLC filed this patent suit, asserting infringement of at least claims 18 and 22 of the '198 patent through the offering of mobile games such as King.com's ("King") "Farm Heroes Saga." (D.I. 1, Compl. ¶ 13.)   King's date for response to the complaint was extended via stipulated order to November 21, 2014.  King now moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) due to the invalidity of the '198 patent under 35 U.S.C. § 101.

Plaintiff also filed related actions against six other Defendants.  Four of those Defendants (Glu Mobile Inc., ngmoco LLC, Rovio Animation Company, and Supercell Inc.) also filed motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) due to the invalidity of the '198 patent under 35 U.S.C. § 101 on October 10, 2014.  *See, e.g.*, *Inventor Holdings LLC v. Glu Mobile Inc.*, Case No. 1:14-cv-01068-LPS-CJB, D.I. 10 (D. Del. Oct. 10, 2014). Plaintiff responded to this motion on October 27, 2014, and the Defendants filed their replies on November 6, 2014.  *Id.*, D.I. 12, Oct. 27, 2014, and D.I. 14, Nov. 6, 2014.  A fifth Defendant, Gameloft Inc., filed its Answer on October 10, 2014.  *Inventor Holdings LLC v. Gameloft Inc.*, Case No. 1:14-cv-01067-LPS-CJB, D.I. 9 (D. Del. Oct. 10, 2014).  The suit against the final Defendant, Kabam Inc., was voluntarily dismissed by Plaintiff on November 4, 2014.  *Inventor Holdings LLC v. Kabam Inc.*, Case No. 1:14-cv-01069-LPS-CJB, D.I. 10 (D. Del. Nov. 4, 2014).

## IV.    STATEMENT OF FACTS

### A.    The '198 Patent Claims Abstract Ideas

All 32 claims of the '198 patent are directed to the abstract idea of using a code to unlock

an outcome in a mobile game.  Representative independent claim 18, which is asserted against

King in the complaint, is set forth below:

> A non-transitory computer-readable medium storing instructions for directing a processor of a mobile device to perform a method, the method comprising:
>
> facilitating play of a game on the mobile device by recognizing inputs provided by a user via an input mechanism of the mobile device, at least one of the inputs causing progress in the game;
>
> receiving a signal comprising an unlock code;
>
> determining a locked outcome of the game;
>
> unlocking the locked outcome of the game using the unlock code, thereby determining an unlocked outcome;
>
> determining an intra-game benefit associated with the unlocked outcome; and
>
> providing the intra-game benefit to the user by incorporating the intra-game benefit into the game.

(Declaration of Elizabeth Stameshkin in Support of Defendant King.Com's Motion to Dismiss

("Stameshkin Decl."), Ex. 1 ("'198 patent"), claim 18.)  The other independent claim, claim 1,

describes a "mobile device" including basic elements such as a "display screen" and "processor,"

as well as a "memory" with software that performs the same steps described in claim 18.  Thus,

these claims generally require that a user be able to play a game on a mobile device until a

certain level where the game "locks", then if the game receives an "unlock code," the user is

allowed to move on or gain a benefit.

Aside from the generic "computer-readable medium" and "mobile device," nothing

differs such activity from a person participating in a promotion – such as playing a "classic

lottery," which "allows a person to pick or receive a set of numbers associated with a lottery

ticket.  If the person's numbers are chosen, the person generally wins a monetary prize."  ('198 patent, 1:63-66.)  In such a scenario, the lottery ticket would comprise an "unlock code" that would permit the user to "unlock" the outcome of winning – which is associated with the "benefit" of the monetary prize.

The dependent claims are merely variations on this abstract theme that add nothing patentable.  Several add nothing more interesting than the location of the "unlock code" or the outcome.  (*See, e.g.*, '198 patent, claims 2-4, 6, 17, 19-24.) Others add the clearly unpatentable notion that the code can be bought or otherwise earned.  (*See id.*, claims 7, 8, 12, 13, 26, 30, 31.) Several others add flourishes to the types of benefits that can be unlocked – such as moving forward in the game.  (*See id.*, claims 9-10, 16, 27-29.)   Still others add the old idea of encrypting the outcome, (*see id.*, claims 5, 11, 25), and the last additions simply add in the notion of giving the user different benefits depending on where they are (*see id.*, claims 14, 15, 32, 33).

The "Summary of the Invention" further underscores the abstract nature of the '198 patent, explaining that the purported invention was focused on improving the ancient notion of "promotions" – nothing technical: the "object of the present invention is to provide a method and apparatus for conducting or enabling a promotion and to provide a method and apparatus for distributing promotions or portions of promotions to potential users."  ('198 patent, 2:21-24.) The summary emphasizes the importance of the "unlock code", but essentially says it can be anything:

> An unlock code can comprise or include a written, spoken or data entered password, a radio or television signal, a sequence or group of keypad selections or entries, a sequence or group of handwritten or spoken entries, an electronic or electromagnetic signal, a numerical or alphanumerical sequence, a sequence, group or combination of musical notes or other sounds, words, syllables, phrases, tones, etc. to be provided audibly or symbolically to

> unlock an outcome, a barcode, a decoding key, rule or algorithm
> for a code or cypher, etc.

('198 patent, 5:42-51.)   A user can use this "code to unlock at least one outcome previously received by the user and stored on the user device." (*Id.*, 7:22-24.)  This outcome may have a "prize or benefit" associated with it, such as a user being allowed "to continue to play a game the user is playing on a user device." (*Id.*, 13:43-45.)  It is truly no different than playing a board game and not being able to move forward until you roll a set of doubles (the "unlock code"). The fact that Plaintiff's claims apply these abstract ideas to playing a game on a mobile (computing) device, does not transform their intrinsic abstract nature.

## B.   The Patent Office Recognized the Underlying Abstract Nature of the Claims

These claims have always had patentability problems. Plaintiff's[2] original proposal for claim 1 was:

> A method for conducting a promotion, comprising:
>
> generating an outcome;
>
> generating an unlock code capable of unlocking said outcome;
>
> providing an indication of said outcome;
>
> providing an indication of said unlock code; and
>
> providing an indication of a benefit associated with said outcome.

(Stameshkin Decl., Ex. 2 (09/604,898 FH, Application) at 56.)  The Examiner correctly rejected such claim as unpatentable under 35 U.S.C. § 101, noting that such claim was "not limited by language to a useful, concrete and tangible application within the technological arts" and "suffer[ed] from undue-breadth." (*Id.*, Ex. 3 (Aug. 12, 2003 Non-Final Rejection) at 2.)  The

---

[2] Plaintiff's successor, Walker Digital, LLC, was the applicant of these inventions.  As set forth in the complaint, Walker Digital assigned all patents to Plaintiff Inventor Holdings as part of a corporate restructuring.  For simplicity, Walker Digital and Inventor Holdings will both be referred to as "Plaintiff."

Examiner also found that each of these steps could be performed "with pencil and paper (i.e., not within the technological arts)." (*Id.* at 3-4.) Plaintiff argued with the examiner but eventually canceled those claims. (Stameshkin Decl., Ex. 4 (Sept. 15, 2004 RCE) at 2.)

Plaintiff then filed a continuation application, U.S. Patent App. No. 11/425,027, and tried again. (Stameshkin Decl., Ex. 5 (11/425,027 FH, June 19, 2006 Prelim. Amend.) at 3.) But the Examiner rejected the new claims under 35 U.S.C. § 101, too. (Stameshkin Decl., Ex. 6 (Oct. 19, 2010 Non-Final Rejection) at 3-4.) So Plaintiff added a generic reference to a "controller" to the claims. At that time (2010), some at the Patent Office allowed applicants to overcome abstract idea rejections by adding a generic computer (or "controller") to the claims. In view of *Alice* and other subsequent decisions, the patent office would certainly have rejected such claims today.

Not quite satisfied yet, Plaintiff filed further continuations, including the one that gave rise to the '198 patent, each time adding a few more generic computer elements, like a screen or an "input mechanism" (like a keyboard) or that the computer was a "mobile device":

> A mobile device operable to facilitate a game playable on the mobile device, the mobile device comprising:
>
> an input mechanism for receiving input from a user of the mobile device;
>
> a display screen for outputting results of the game;
>
> a processor;
>
> a memory, the memory operable to store a first software program for conducting the game on the mobile device and a locked outcome of the game such that, upon the first software program being stored in the memory, the processor is operable with the first software program to:
>
> facilitate play of the game by recognizing inputs from the user via the input mechanism;
>
> receive a signal comprising an unlock code;

unlock the locked outcome of the game using the unlock code,
thereby determining an unlocked outcome;

determine an intra-game benefit associated with the unlocked
outcome; and

incorporate the intra-game benefit into the game while it is being
played on the mobile device by the user.

('198 patent, claim 1.)   This claim was allowed, but neither Plaintiff's additions of generic
computer equipment, such as "display screen" and "processor," nor its application of this
abstract idea to playing an unidentified game on a generic mobile device would render such
abstract ideas patentable under the current standards of the Patent Office, issued in June of 2014
after *Alice*.[3]   (*See* Stameshkin Decl., Ex. 7 at
http://www.uspto.gov/patents/announce/alice_pec_25jun2014.pdf.)   The new guidelines explain
that "[r]equiring no more than a generic computer to perform generic computer functions that are
well-understood, routine and conventional activities previously known to the industry" will not
convert an unpatentable abstract idea into a patent-eligible invention.   (*Id*. at 3.)   "[M]ere
instructions to implement an abstract idea on a computer" is similarly insufficient.   (*Id.*)
"[G]enerally linking the use of an abstract idea to a particular technological environment" (such
as mobile games) is not enough.   (*Id.*)   Plaintiff's asserted claims are textbook abstract ideas,
claiming the use of a "code" to identify the entitlement to receive a benefit.

## C.   The '198 Patent's Technological Disclosures are Generic

The "technology" recited in the '198 patent's claims are nothing more than generic
computer equipment, such as "mobile device," "processor," "memory," "software program,"
"GPS detector," and "non-transitory computer readable medium."   The specification makes no

---

[3] Plaintiff may argue, as they did in the related cases, that the issuance of the '198 patent after the
*Alice* is "strong evidence" of the patent's validity.   However, the Examiner issued the Notice of
Allowance for the '198 patent on March 7, 2014, several months before *Alice* was decided and
the Patent Office issued its new standards for determining validity under 35 U.S.C. § 101.

attempt to specialize or limit those generic terms, which is not surprising since the purported "invention" is about "promotions," not technology.   The entire "system" is shown in generic boxes in Figure 1:



('198 patent, Fig. 1.)  The accompanying text adds nothing:

> The apparatus 50 includes a controller 52 that may communicate with one or more user or client devices 54 and one or more intermediary devices 56 via a computer, data, or communications network 58.   The controller 52 may be located at a retailer or merchant, mall, etc., or function as a server for a World Wide Web site.

(*Id.*, 10:45-51.)  While the claims purport to limit the application of the abstract idea to a "game" on a "mobile device," the specification also does not provide any additional limitation to these generic elements.   For example, the specification simply states that a user device could be "a personal digital assistant, laptop computer, cellular telephone, etc." ('198 patent, 4:55-59.)

## V.   ARGUMENT

### A.   Determination of Patent Eligibility at This Stage is Appropriate

The determination of patentable subject matter at this stage of the proceedings is both appropriate and necessary.   The validity of the asserted claims under 35 U.S.C. § 101, which defines patentable subject matter, is a "threshold" issue for the Court to decide as a matter of law.  *See, e.g.*, *Bilski v. Kappos*, 561 U.S. 593, 602 (2010); *Ultramercial*, 2014 WL 5904902, at

*9-*12 ("whether claims meet the demands of 35 U.S.C. § 101 is a threshold question, one that must be addressed at the outset of litigation"); *In re Roslin Inst. (Edinburgh)*, 750 F.3d 1333, 1335 (Fed. Cir. 2014) ("Section 101 patent eligibility is a question of law that we review de novo."); *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344, 1348-49 (Fed. Cir. 2014).

A court can and often should rule on the threshold issue of patentability early in a case to "conserve scare judicial resources" and provide "a bulwark against vexatious infringement suits." *Ultramercial*, 2014 WL 5904902, at *8 (setting forth a plethora of reasons to decide eligibility issues early in a litigation). This approach "can spare both litigants and courts years of needless litigation." *I/P Engine, Inc. v. AOL Inc.*, 576 F. App'x 982, 996 (Fed. Cir. 2014) (Mayer, C., concurring).

Despite many plaintiffs' protestations to the contrary, there is no need for formal claim construction in order to decide this issue. *Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Canada*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("claim construction is not an inviolable prerequisite to a validity determination under [Section] 101"); *see also Genetic Techs*, 2014 WL 4379587, at *6; *Tuxis Techs.*, 2014 U.S. Dist. LEXIS 122457, at *13-*15; *DietGoal Innovations LLC v. Bravo Media LLC*, No. 13 Civ. 8391 (PAE), 2014 WL 3582914, at *16 (S.D.N.Y. July 8, 2014); *Compression Tech. Solutions LLC v. EMC Corp.*, No. C-12-01746 RMW, 2013 WL 2368039, at *3 (N.D. Cal. May 29, 2013), *aff'd*, 557 F. App'x 1001 (Fed. Cir. Mar. 10, 2014) (accepting patentee's claim constructions for purposes of deciding patentability).

**B.** **Under *Alice*, the Court Evaluates the Patentability of Abstract Ideas Using a Two-Part Test**

Section 101 provides that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof,

may obtain a patent therefor . . . ."  35 U.S.C. § 101.  However, the Supreme Court has long held

that "[l]aws of nature, natural phenomena, and abstract ideas" are not patentable subject matter

under Section 101.  *Alice*, 134 S. Ct. at 2354 (internal quotation omitted).  These limitations on

patentability exist to prevent "monopolization" of "the basic tools of scientific and technological

work" that "might tend to impede innovation … thereby thwarting the primary objective of the

patent laws."  *Id.* (internal citations omitted).

The Supreme Court in *Alice* held that a two-part test, first set forth in *Mayo Collaborative*

*Services v. Prometheus Laboratories, Inc.*, 132 S. Ct. 1289 (2012), determines the patentability

of claims covering an "abstract idea."  First, the Court determines whether the claims "are

directed to a patent-ineligible concept," such as an abstract idea.  *Alice*, 134 S. Ct. at 2355.  If so,

the Court proceeds in the second step to "search for an inventive concept—*i.e.*, an element or

combination of elements that is sufficient to ensure that the patent in practice amounts to

significantly more than a patent upon the ineligible concept itself."  *Id.* (quotation marks and

brackets omitted).  These "additional elements" must be "more than simply stating the abstract

idea while adding the words 'apply it.'"  *Alice*, 134 S. Ct. at 2357 (quotation marks and brackets

omitted).  Moreover, "well-understood, routine, conventional activity" or technology – including

general-purpose computers – does not constitute an "inventive concept."  *Mayo*, 132 S. Ct. at

1294.  "Thus, if a patent's recitation of a computer amounts to a mere instruction to implement

an abstract idea on a computer, that addition cannot impart patent eligibility."  *Alice*, 134 S. Ct.

at 2358 (citation, quotation marks, ellipses and brackets omitted).

Recent cases involving similar technology and questions have held patents invalid using

the *Alice* test.  In *Ultramercial*, the Federal Circuit found claims unpatentable that are strikingly

similar to the claims at issue here.  *Ultramercial*, 2014 WL 5904902, at *4.  In *Ultramercial*, a

user may view "copyrighted media" that is otherwise restricted in access only after viewing an ad, in essence, unlocking the content. *Id.* The '198 patent requires that a user is only permitted access to a locked outcome through the use of an unlock code. (*See, e.g.*, '198 patent, claims 1, 18.) Dependent claims 13 and 31 further require that, prior to unlocking the locked outcome, a user complete a "qualifying activity," and such qualifying activity consists of "watching a specified advertisement." ('198 patent, claim 13.) In *Ultramercial*, the Federal Circuit found these claims to be unpatentable, noting that "the concept embodied by the majority of the limitations describes only the abstract idea of showing an advertisement before delivering free content." *Ultramercial*, 2014 WL 5904902, at *4.

In *Planet Bingo,* the Federal Circuit affirmed the invalidity of claims directed to computerized bingo games, finding that the steps of "selecting, storing, and retrieving two sets of numbers, assigning a player identifier and a control number, and then comparing a winning set of bingo numbers with a selected set of bingo numbers" were "mental steps which can be carried out by a human using pen and paper." *Planet Bingo, LLC v. VKGS LLC*, No. 2013-1663, 2014 WL 4195188, at *2 (Fed. Cir. Aug. 26, 2014) (affirming invalidity of claims directed to computerized bingo game) (internal quotations and citation omitted). In *Planet Bingo*, much like here, the claims also required generic computer elements such as "a computer with a central processing unit," "a memory," "a video screen," and "a program . . . enabling" these mental steps. *Id.* at *3. But the function performed by these elements was, "purely conventional," and therefore did not confer patentability on the otherwise abstract idea of managing a bingo game. *Id.*

In *Tuxis Technologies, LLC*, on a motion to dismiss, the court invalidated claims which covered "nothing more than suggesting an additional good or service, in real time over an

electronic communications device, based on certain information obtained about the customer and the initial purchase." *Tuxis Techs.*, 2014 U.S. Dist. LEXIS 122457, at *13.  In *Walker Digital, LLC v. Google, Inc.*, C.A. No. 11-cv-318-LPS, 2014 U.S. Dist. LEXIS 122448 (D. Del. Sept. 3, 2014), the court invalidated claims on "the basic concept of controlled exchange of information about people as historically practiced by matchmakers and headhunters." *Id.* at *14.  The list goes on.[4]

Applying the *Alice* test here compels the conclusion that the '198 patent's claims are invalid under § 101.

### C.    The Claims of the '198 Patent are Directed to Abstract Ideas

The first step of the *Alice* test asks "whether the claims at issue are directed to a patent-ineligible concept," *i.e.*, whether they are directed to laws of nature, natural phenomena, or abstract ideas.  *Alice*, 134 S. Ct. at 2355.  Here, as in *Alice*, the relevant category of patent-ineligible concepts is "abstract ideas."  *See id.*  As set forth above, each asserted independent claim of the '198 patent is directed to the abstract idea of using a code to unlock a benefit, in a

---

[4] *See*, *e.g.*, *McRO*, 2014 U.S. Dist. LEXIS 135212, at *26-*27  (invalidating claims directed to "automatically animating lip synchronization and facial expression of three-dimensional characters"); *Eclipse*, 2014 WL 4407592, at *11 (invalidating claims to a "computer-based notification system"); *Cogent*, 2014 U.S. Dist. LEXIS 139856, at *11 (invalidating a patent directed to the abstract idea of "maintaining and searching a library of information"); *Open Text S.A.*, 2014 WL 4684429, at *4 (invalidating claims that recite abstract ideas for the "commonplace and time-honored practice of interacting with customers to promote marketing and sales");  *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, No. 2:13-CV-655, 2014 U.S. Dist. LEXIS 122244, at *36-*38 (E.D. Tex. Sept. 3, 2014) (invalidating claims to computerized loyalty rewards system); *CMG Fin. Servs., Inc. v. Pac. Trust Bank, F.S.B.*, No. CV 11-10344 PSG (MRWx), 2014 U.S. Dist. LEXIS 145557, at *52 (C.D. Cal. Aug. 29, 2014) (invalidating claims to system for automated account transactions); *DietGoal Innovations LLC*, 2014 WL 3582914, at *3 (invalidating claims for "computerized meal planning"); *Comcast IP Holdings I, LLC v. Sprint Commc'ns Co. L.P.*, No. 12-205-RGA, 2014 WL 3542055, at *3-*4 (D. Del. July 16, 2014) (invalidating claims which boiled down to "the very concept of a decision"); *Every Penny Counts, Inc. v. Wells Fargo Bank, N.A.*, No. 8:11-cv-2826-T-23TBM, 2014 U.S. Dist. LEXIS 127369, at *2-*3 (M.D. Fla. Sept. 11, 2014) (invalidating claims covering "a method of and a system of automated saving or automated charitable giving").

game.  In fact, the underlying abstract idea of the claims can be performed without the use of a computer at all.  For example, a demonstration of how claim 18 could be performed by a clerk at a market without the use of a computer is set forth below, using an example of playing a board game such as Monopoly:[5]

| **Claim 18 of the '198 Patent** | **Playing a Board Game** |
| --- | --- |
| A non-transitory computer-readable medium storing instructions for directing a processor of a mobile device to perform a method, the method comprising: | Instructions for playing a board game such as Monopoly, comprising: |
| facilitating play of a game on the mobile device by recognizing inputs provided by a user via an input mechanism of the mobile device, at least one of the inputs causing progress in the game; | facilitating play of a board game by allowing a player to take some action, such as rolling a die, such action causing progress in the game; |
| receiving a signal comprising an unlock code; | receiving a signal, such as the results of a roll of a die, that indicates how far a player may move; |
| determining a locked outcome of the game; | determining that the player can move the game piece a certain number of steps if the user rolls that number on a die; |
| unlocking the locked outcome of the game using the unlock code, thereby determining an unlocked outcome; | allowing the player to move the number of steps indicated by the roll of the die; |
| determining an intra-game benefit associated with the unlocked outcome; and | determining what benefit is associated with the square on which the player has landed, such as the ability to purchase the deed to a property in Monopoly; and |
| providing the intra-game benefit to the user by incorporating the intra-game benefit into the game. | providing the appropriate benefit to the player as part of the board game, such as providing the user with that deed. |

---

[5] Plaintiff discusses that "a user participating in a promotion may receive significant entertainment," including a "board game." ('198 patent at 10:28-36.)

Both the Supreme Court and the Federal Circuit have made clear that a method that "can be performed in the human mind, or by a human using a pen and paper . . . is merely an abstract idea and is not patent-eligible under § 101." *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372-73 (Fed. Cir. 2011); *see also Gottschalk v. Benson*, 409 U.S. 63, 67 (1972) (method that "can be done mentally" was an abstract idea); *Parker v. Flook*, 437 U.S. 584, 586 (1978) ("the computations can be made by pencil and paper calculations").

Each of the dependent claims also fail. Accepting a payment or requiring some other basic qualifying action, such as watching an advertisement, in order to unlock a locked outcome is no different than the requirement to pay for a deed in Monopoly. (*See* '198 patent, claims 9-10, 16, 27-29.) *See Ultramercial*, 2014 WL 5904902, at *4 (finding abstract the "idea of showing an advertisement before delivering free content"). Similarly, the intra-game benefit could involve permitting a user to draw a "Community Chest" card, which could provide another benefit of "advancement" or "enhancement" of the game, such as sending a user to the "Go" square. (*See* '198 patent, claims 9-10, 16, 27-29.) The fact that the user provides the "unlock code" through the role of the die, or how the die itself is stored, similarly would have no effect on the abstract nature of these claims. (*See, e.g.*, *id.*, claims 2-4, 6, 17, 19-24.) And assigning a player to safeguard deeds and/or Monopoly money prior to appropriate distribution as "intra-game benefits" (akin to encryption), or awarding different benefits based on the player landing on different board spaces (akin to location-based awards), are also abstract. (*See, e.g.*, *id.*, claims 5, 11, 14, 15, 25, 32, 33.) None of these claims add "sufficiently 'more'" to the independent claims to render them non-abstract. *See Amdocs*, 2014 U.S. Dist. LEXIS 152447, at *28. *Accord Ultramercial*, 2014 WL 5904902, at *4 ("Although certain additional limitations, such as consulting an activity log, add a degree of particularity, the concept embodied by the majority of

the limitations describes only the abstract idea of showing an advertisement before delivering free content.").

### D.      The Asserted Claims Do Not Contain Anything That Transforms the Patent-Ineligible Abstract Ideas into Patent-Eligible Invention

*Alice's* second step requires the Court "examine the elements of the claim to determine whether it contains an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application." *Alice*, 134 S. Ct. at 2357 (quotation marks omitted). A valid claim must include "additional features" beyond the abstract idea itself, which "requires more than simply stating the abstract idea while adding the words 'apply it.'" *Id.* (quotation marks and brackets omitted). It also requires more than the recitation of "well-understood, routine, conventional activity" or technology. *Mayo*, 132 S. Ct. at 1294. In particular, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention," particularly given "the ubiquity of computers." *Alice*, 134 S. Ct. at 2358. "Thus, if a patent's recitation of a computer amounts to a mere instruction to implement an abstract idea on a computer, that addition cannot impart patent eligibility." *Id.* (citation, quotation marks, ellipses, and brackets omitted).

Here, none of the asserted claims add any "inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application." *Alice*, 134 S. Ct. at 2357. Each, at best, recites only the generic and conventional computer-related limitations that the Supreme Court has said are not enough. (*See, e.g.*, '198 patent, claim 1 ("mobile device," "input mechanism," "display screen," "processor," "memory," "software program"), 18 ("non-transitory computer-readable medium storing instructions for directing a processor of a mobile device").) Since no specialized technology or programming are claimed or described, the claims are invalid. *Open Text*, 2014 WL 4684429, at *2 (invalidating claims under Section 101 that incorporated "[n]o

16

special technology or programming" and that implemented the abstract idea "on a generic computer system without any meaningful limitations"); *see also, e.g.*, *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1352 (Fed. Cir. 2014) (invalidating claims directed to computer transactions "via a computer network"). The fact that the "computer" in the claims is a mobile device does nothing to change the analysis. *See, e.g.*, *UbiComm, LLC v. Zappos IP, Inc.*, Civ. A. No. 13-1029-RGA, 2013 WL 6019203, at *5 (D. Del. Nov. 13, 2013) ("Here, while, the Patentee has divided the world of computers into two halves, stationary and mobile, and required a computer from each half, this limitation does little more than require two general-purpose computers, an act that does nothing to transform a nonpatentable abstract idea into a patentable invention.").

Like those cases, the generic computer elements of claim 18 here add nothing to transform the abstract idea into a patent-eligible invention. The first step involves "facilitating play of a game on the mobile device by recognizing inputs provided by a user." ('198 patent, claim 18.) But all this amounts to is the receipt of input from a user – a basic function of a computer. *See Alice*, 134 S. Ct. at 2359 ("the use of a computer to obtain data, adjust account balances, and issue automated instructions . . . are well-understood, routine, conventional activities previously known to the industry") (internal quotations, citation and brackets omitted). Receiving an unlock code, determining an unlocked outcome, unlocking the outcome, determining a benefit associated with the outcome, and providing that benefit to a user is no different from the blocking of access to copyrighted material prior to watching in advertisement found unpatentable in *Ultramercial*. *Ultramercial*, 2014 WL 5904902, at *4-*6 (adding routine steps such as updating an activity log or invoking the "Internet" does not confer patent eligibility); *see also Planet Bingo*, 2014 WL 4195188, at *3 (finding "storing, retrieving, and verifying" to be "generic functions" of a computer). The other claims in the patents-in-suit fare

no better, as they are all similarly or identically directed to generic, routine, and conventional activities or technologies.

Finally, considering each claim as an "ordered combination" adds nothing to confer patent-eligibility. *Alice*, 134 S. Ct. at 2359-60. As in *Alice*, the "claims do not, for example, purport to improve the functioning of the computer itself. . . . Nor do they effect an improvement in any other technology or technical field. . . . Instead, the claims at issue amount to nothing significantly more than an "instruction to apply the abstract idea" – such as using a code to unlock a benefit – "using some unspecified, generic computer." *Id.* (citations and quotation marks omitted). Under *Alice*, "that is not enough to transform an abstract idea into a patent-eligible invention." *Id.* (quotation marks omitted). Nor does the '198 patent claim a novel machine beyond a general purpose computer (in the form of a "mobile device"), or provide any transformation beyond "the transfer of content between computers" which "is merely what computers do and does not change the analysis." *Ultramercial*, 2014 WL 5904902, at *6.

The asserted claims "add nothing of substance to the underlying abstract idea," and are therefore "patent ineligible under § 101." *Alice*, 134 S. Ct. at 2360.

## VI.    CONCLUSION

For the foregoing reasons, King respectfully requests that the Court grant its Motion to Dismiss and find that the asserted claims of the patents-in-suit are invalid under 35 U.S.C. § 101.

Dated: November 21, 2014

By: /s/ Steven L. Caponi
Steven L. Caponi (DE Bar #3484)
**Blank Rome LLP**
12 N. Market Street
Wilmington, DE 19801
(302) 425-6400
caponi@blankrome.com

*Attorney for Defendant
King.com Ltd.*